THE STATE, THE TIDE–WATER PIPE LINE COMPANY,. PROSECUTOR, v. ARTHUR E. BERRY, COLLECTOR OF· WOODBRIDGE.

1. Foreign corporations doing business in this state are subject to a state· tax under the act of April 18th, 1884. *Rev. Sup., p.* 1016.
2. Such companies are also subject to be taxed for real estate owned by· them in this state, in the township where it is located, under the General Tax law of 1866.
3. "The pipe line" of the relators is real estate within the·meaning of· our tax laws, and subject to be assessed as such.

On *certiorari*.

Argued at November Term, 1889, before Justices VAN SYCKEL, MAGIE and GARRISON.

For the plaintiff, *A. A. Clark* and *J. R. English.*

For the defendant, *Charles T. Cowenhoven.*

The opinion of the court was delivered by

VAN SYCKEL, J.   The prosecutor, a body corporate organized under the laws of the State of Pennsylvania, has an iron pipe line for the purposes of carrying crude petroleum from McKean county, Pennsylvania, to the Kill von Kull at Bayonne, New Jersey, and there the refineries take it for manufacturing purposes.

This pipe runs through the township of Woodbridge, Middlesex county, a distance of seven miles; it is buried two and a half feet to three feet, and is upon lands of persons from whom said company has acquired by deed a right of way for the purpose of laying and maintaining said pipe line.

The said company has been assessed in the township of Woodbridge for " seven miles of pipe line for· conveying petroleum oil, running across the township from Raritan township to the Rahway river, 36,960 feet, at 40 cents per foot."

The assessment is upon land, and the description is as above recited.

The plaintiff corporation is organized under an act of the legislature of Pennsylvania relating to " joint stock companies." *Purd. Dig.* 937.

The act gives to such company the power to convey lands, to use a common seal, and to sue and be sued in its corporate name.

Article XVI., § 13, of the constitution of Pennsylvania, provides that the term " corporations," as therein used, shall include " all joint stock companies or corporations having any

of the powers or privileges of corporations not possessed by individuals or partnerships."

The relator is therefore subject to the laws of this state which regulate the taxation of foreign corporations.

The said company has been assessed, and has paid a state tax, under the act of April 18th, 1884, entitled "An act to provide for the imposition of state taxes upon certain corporations, and for the collection thereof."

Section 1 of that act provides: "That every telegraph, telephone, cable or electric light company, every express company, not owned by a railroad company and otherwise taxed, every gas company, palace or parlor or sleeping car company, every oil or pipe line company, and every fire, life, marine or accident insurance company, doing business in this state, except mutual fire insurance companies which do not issue policies on the stock plan, shall pay an annual tax, for the use of the state, by way of a license for its corporate franchise, as hereinafter mentioned." *Rev. Sup., p.* 1016, *pl.* 156.

Section 4 of the act provides the mode in which the tax shall be imposed. The revenue derived by the state under this law is in return for the license which these corporations have to use and enjoy their corporate franchises in this state. It applies as well to foreign as to domestic corporations.

Our act respecting corporations (*Rev., p.* 196, *pl.* 103) provides, that "foreign corporations doing business in this state shall be subject to all the provisions of this act, so far as the same can be applied to foreign corporations." The Corporation act invests foreign corporations with the right to sue and be sued in our courts; to hold, purchase, mortgage and convey real estate, and to exercise all other powers granted in said act, so far as the same can be applied to them. They are thus permitted by comity and the laws of this state to enjoy and exercise corporate franchises in this state, and for that license a tax is exacted. *Rev., tit. "Corporations," p.* 175, § 1, and *p.* 195, § 99.

Mr. Justice Strong, in delivering the opinion of the court in *Railroad Company* v. *Georgia,* 98 *U. S.* 365, says: "It

is quite too narrow a definition of the word 'franchise' to hold it as meaning only the right to be a corporation. The word is generic, covering all the rights granted by the legislature." The act of 1884 requires all the enumerated corporations doing business in this state to pay an annual tax, for the use of the state, by way of a license for their corporate franchises. The imposition is not in compensation for the grant of the franchise by the state, but for the use of the franchises in the state. Foreign corporations doing business in this state are within the language of the act.

The language in the fourth section, " all other corporations incorporated under the laws of this state," shows that the draftsman of the act had in his mind the distinction between corporations doing business in this state and corporations created by the laws of this state. The purpose of that provision was to bring within the operation of the act those corporations incorporated under the laws of this state to transact business in other states, and which were therefore not included among the corporations " doing business in this state."

Section 8 of the same act expressly exempts foreign insurance companies, clearly implying that the act was intended to embrace all the companies doing business in this state, whether foreign or domestic, save only those so excepted. Foreign corporations enjoying like privileges with domestic corporations, a construction should not be favored which will relieve them of like burdens. The relator being within the act of 1884, is it also subject to be assessed under the act of 1866 ? The former is, "An act to provide for the imposition of state taxes upon certain corporations, and for the collection thereof." It has no relation to the act of 1866, which is the General Tax law providing for local taxation.

Section 2 of the latter act (*Rev., p.* 1150, *pl.* 61) provides that all real and personal estate within this state, whether owned by individuals or by corporations, shall be liable to taxation at the full and actual value thereof.

Its *situs* within this state subjects it to the public burden. No immunity is granted to individuals or to corporations,

foreign or domestic, except in those instances specified in *placita* 64.

If the relator's pipe line is real estate, it is taxable in the township where it is located; if personal estate, it is to be assessed where the business of the company is usually carried on in this state. *Rev., tit. "Taxes," pl.* 77 and 81, *p.* 1157.

The term "real estate" is defined in the act of 1866 to include all lands, all water power thereon or appurtenant thereto, and all buildings or erections thereon or affixed to the same, trees and underwood growing thereon, and all mines, quarries, peat and marl beds and all fisheries. *Rev., p.* 1150, *pl.* 62.

The assessment in this case, as before stated, is upon seven miles of pipe line, laid from two and a half to three feet under ground, for the purpose of conveying petroleum oil.

The right of the company in the land was conveyed by deed, which grants a right "of way over and through lands in Middlesex county for the purpose of constructing, from time to time, one line of iron pipe for the transportation of petroleum, in such manner as said grantee may deem necessary, and with free ingress and egress to construct, operate, maintain and, from time to time, repair and remove the same in such manner as may be desired."

This pipe line, permanently placed in the soil in which the company has acquired an interest by deed, is real estate, within the meaning of the Tax law. It seems clear that, if any one entered upon this land and committed an injury to this pipe line, the company could maintain an action for breaking and entering its close.

What is personal estate within the meaning of the Tax law is specified in section 4, *placita* 63, of that act (*Rev., p.* 1151), and this, manifestly, is not included in that description.

If the property is not correctly described as real estate in the assessment, that will be amended by this court under the act of 1881 (*Rev. Sup., p.* 602, *pl.* 487); and if the pipe line could be treated as personal estate, it would be the duty of this court, under the same act, to correct the assessment accordingly.

The assessment should be affirmed.