ATTORNEY GENERAL, *ex rel.* POTTER, *v.* McVICHIE.

LIMITED PARTNERSHIPS — ELECTION OF MANAGERS — CUMULATIVE
VOTING OF STOCK—STATUTES—CONSTRUCTION.

The minority representation law (3 Comp. Laws, § 8553), se-
curing to minority stockholders in corporations the power of
electing a representative in boards of directors, and provid-
ing for cumulative voting of stock, is not applicable to an
election of managers of a limited partnership association or-
ganized under 2 Comp. Laws, §§ 6079–6089, since by 2 Comp.
Laws, §§ 6057, 6083, the authority of a manager to contract
for the partnership is preserved to some extent in limited
partnership associations; and the fact that by Const. art. 15,
§ 11, certain provisions thereof are made applicable alike to

all associations having any of the powers of corporations, does
not indicate that the word "corporation," in all legislation,
is to be comprehensively construed.

Quo warranto proceedings by Charles A. Blair, attorney
general, on the relation of Waldo T. Potter, to determine
the right of Donald McVichie and others to offices of
managers of a limited partnership. Submitted October
21, 1904. (Docket No. 71.) Dismissed December 7, 1904.

*Charles A. Blair* (*W. T. Potter*, of counsel), in pro.
per.
*Young & Bell* and *William P. Belden*, for respondents.

Hooker, J. The Anthony Powder Company, Limited,
was organized on January 31, 1890, under Act No. 191,
Pub. Acts 1877 (2 Comp. Laws, §§ 6079–6089). The
original articles of association show that the capital was
to be $10,000, divided into 2,500 shares, of $4 each. Sub-
sequently the shares were increased in number to 10,000.
The articles also provided that the board of managers
should consist of five persons. Their term of office was
one year.

At the annual meeting of stockholders held Febru-
ary 2, 1904, the relator was present, owning 5 shares of
stock. There being 5 managers to be elected, he and others
sought to cumulate their votes for the relator, under the
minority representation law (3 Comp. Laws, § 8553).
Upon that basis he received a total of 24,250 votes. All
of the managers being voted for at once, the remaining
stock—5,150 shares—was voted for each of the respond-
ents. The meeting refused to recognize the right to have
cumulative votes counted, and credited Potter with 4,850
votes—that being the number of shares so voted—and de-
clared the respondents to be elected members of the board
of managers.

The relator thereupon instituted these proceedings to
inquire into their right to the office, and prays judgment

upon the right of the relator to such office. The only question raised is whether the minority law (§ 8553, 3 Comp. Laws) applies to this association.

Counsel for the relator discuss four propositions, viz. :

"The relator takes the position that it does apply, for the following reasons:

"1. Under the Constitution, the statutes, and the decisions of our Supreme Court, a partnership association is a corporation.

"2. If, in the opinion of this court, it is not a common type of a corporation, yet we maintain that partnership associations are governed by the law of corporations.

"3. Should this court hold that the question whether or not a partnership association is a corporation, or is governed by the law of corporations, depends partly on the statute and partly on its articles of organization, then relator submits that the Anthony Powder Company, Limited, is a corporation, and is governed by the law relative to corporations.

"4. The stockholders' minority law is entitled to a liberal construction."

The importance of these questions rests upon the conclusion that the minority representation law necessarily applies in case we may say that a partnership association is a corporation, or is governed by the law pertaining to corporations generally. Certain provisions of the Constitution are made applicable to "all associations and joint stock companies, having any of the powers or privileges of corporations, not possessed by individuals or partnerships." See Const. § 11, art. 15. But it does not follow that the term "corporation," as thereafter used in legislation, must in every instance be so comprehensively construed. Had the Constitution makers so intended, they could easily have said so, and the fact that the provision was limited to the term as used in the preceding sections indicates a contrary intention. We have therefore to ascertain the intention of the legislature in passing the minority law.

At the time it was passed the directors or trustees of an ordinary corporation constituted a board by which the

corporation was managed and its business was done. A majority of a quorum of the board, only, could do business for the corporation, except as such majority delegated power. It is radically different as to members of ordinary copartnerships where each member has authority to contract for the copartnership. This feature is preserved to some extent in limited partnerships and in partnership associations. See 2 Comp. Laws, §§ 6057, 6083.

The application of the minority law to corporations in general does not make it possible for the minority member or members to act against the wish of the majority of the board. To apply it to partnership associations would enable minority stockholders to elect one or two of several managers, who, though a minority, without authority from or the consent of a majority, could lawfully bind the association by their acts and contracts. There is nothing in the minority act which justifies an inference of an intention to authorize this as to general corporations, and if this unusual, if not unreasonable, policy is to be established under the act, it must be through a construction which applies it to partnerships or partnership associations—possibly both— where individual agency is preserved by the terms of the organic law. The act provides, in terms, that cumulative voting is proper in elections for directors of any corporation. But the legislature for years has avoided applying the name "corporation" to these associations, and designated them by the name of "partnerships;" and it is not, in our opinion, unreasonable to conclude that it was not their intention to include them under the term "corporations" in this statute. An opposite construction would make the law a sword susceptible of use for aggression, whereas it was obviously intended as a shield for defense.

Judgment of ouster must be denied, and the proceedings dismissed, with costs.

The other Justices concurred.